989 So.2d 1224 (2008)
T.R., Mother of V.D. and P.D., Children, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, et al., Appellee.
No. 5D07-4028.
District Court of Appeal of Florida, Fifth District.
September 5, 2008.
Allan Campbell, Lake Mary, for Appellant.
Kelly A. Swartz, Department of Children and Families, Rockledge, for Appellee Department of Children and Families.
Annette M. Lizardo, Statewide Guardian Ad Litem Office, Orlando, for Appellee Guardian Ad Litem.
COHEN, J.
T.R. challenges the trial court's adjudication of dependency as to her daughter, P.D., and subsequent termination of jurisdiction without allowing her the opportunity to substantially comply with her reunification case plan. Because the trial court's finding of dependency was not supported by competent, substantial evidence, we reverse.
On May 19, 2007, the Department of Children and Families (hereinafter "Department") received a report that T.R.'s paramour frequently sexually assaulted P.D. when her mother left the home. After interviewing P.D., the Department informed T.R. that her daughter alleged that T.R.'s paramour both orally contacted and placed his penis on top of her vagina. T.R. *1225 stated that her daughter was lying and that she did not believe such contact constituted rape.[1] Based principally on these facts, the Department filed a petition for dependency alleging that T.R. abused, abandoned, or neglected P.D., or that P.D. was at imminent risk of abandonment, abuse, or neglect.[2]
At the adjudicatory hearing, T.R. testified that from February to May 2007, her friend, Mr. Reed, would care for P.D. one night a week while she worked. On these nights, she would drop P.D. off at Mr. Reed's residence where he lived with two roommates. In April 2007, P.D. stated that she wanted to sleep at home instead of at Mr. Reed's. When T.R. asked why, she was met with silence. At no time did P.D. indicate that anything inappropriate, sexual or otherwise, occurred. Nonetheless, T.R. confronted Mr. Reed and asked if anything had happened between him and P.D. He responded in the negative. Believing that nothing inappropriate happened, she continued to allow P.D. to stay with Mr. Reed.
On May 19, 2007, T.R. was first told by P.D.'s friend that Mr. Reed sexually assaulted P.D. T.R. again questioned P.D., who for the first time acknowledged the sexual abuse.[3] Upon learning of this allegation, T.R. took P.D. and confronted Mr. Reed. In response, Mr. Reed told T.R. to get P.D.'s things and leave. T.R. then took P.D. to a hospital emergency room in Winter Park, Florida for an examination.
Based on the facts set forth above, the trial court found that T.R. abused, neglected, or abandoned P.D., or that P.D. was at imminent risk of abuse or neglect. The trial court subsequently adjudicated P.D. dependent as to T.R. and, pursuant to a joint motion from the father and the guardian ad litem, terminated jurisdiction.[4]
A finding of dependency will be sustained if the trial court applied the correct law and its ruling is supported by competent, substantial evidence. C.M. v. Dep't of Children & Families, 823 So.2d 182, 183 (Fla. 5th DCA 2002). Both parties concede that the trial court adjudicated P.D. dependent based on T.R.'s failure to protect her from Mr. Reed's sexual abuse. The parties also agree that this required the Department to show that T.R. knew or should have known that Mr. Reed was abusing P.D. See In re. C.R., 937 So.2d 1257, 1260 (Fla. 2d DCA 2006); H.B. v. Dep't of Children & Families, 987 So.2d 808 (Fla. 5th DCA 2008). The Department did not meet its burden.
The Department argues that T.R. failed to protect P.D. because she was "on notice of possible harm" when P.D. indicated she did not want to stay with Mr. Reed, yet still allowed her to stay with him. The weakness of this argument is that there was no evidence that T.R. knew or *1226 had reason to know that Mr. Reed was sexually abusing her daughter. When asked why she did not want to stay with Mr. Reed, P.D. did not allege sexual misconduct. She said nothing. When T.R. confronted Mr. Reed, he denied any wrongdoing. Although T.R. indicated that she assumed the "worst" when her daughter indicated she did not want to stay with Mr. Reed, this amounts to nothing more than mere conjecture. Contrary to the Department's assertion, T.R. had no notice that Mr. Reed was harming P.D. in any manner.[5]
The Department also places particular emphasis on T.R.'s testimony that she believed P.D. lied about the alleged sexual abuse and that she did not believe oral sex was rape. Although T.R. stated that she did not believe the allegations of sexual abuse, she nevertheless took P.D. to the emergency room to be examined. T.R.'s belief that oral sex is not rape, while patently erroneous, simply is not proof that she failed to protect P.D.
Even viewing the evidence in the light most favorable to the Department, there is no evidence that T.R. knew or should have known of Mr. Reed's alleged abuse. There is also no evidence to suggest that the sexual abuse could not have occurred without T.R.'s knowledge. See S.P. v. Dep't of Children & Families, 866 So.2d 1253, 1255 (Fla. 5th DCA 2004) (affirming order of dependency where abuse could not have occurred without the mother's knowledge). Consequently, there is no evidence that T.R. abused P.D. by allowing her to stay with Mr. Reed. There also is no evidence to establish a nexus between T.R.'s actions and any prospective abuse of P.D. The fact that T.R. continued to allow P.D. to stay with Mr. Reed after April 2007, is insufficient because T.R. had no knowledge of any abuse. Furthermore, there is no record evidence to indicate that T.R. allowed or would allow Mr. Reed to care for P.D. after learning of the alleged abuse. Consequently, the trial court's order of dependency must be reversed.
Although reversing the finding of dependency, we also note that the trial court awarded temporary custody, before the disposition hearing, to P.D.'s father who lives in Texas. Although indicating it would address visitation and child support at the disposition hearing in its order awarding temporary custody, the trial court instead terminated jurisdiction and closed the case. This effectively awarded permanent custody to the father, with no provision for visitation. While this court has reservations about the propriety of this procedure, we need not address it in light of the conclusion above. We remand with instructions to have P.D. returned to her mother.
REVERSED and REMANDED.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] T.R.'s reaction to the allegations was understandably troubling to the Department and no doubt the trial court. At trial, T.R. testified that had her daughter told her of oral contact that she would have been disgusted and called the police.
[2] The Department petitioned for dependency of both of T.R.'s children, P.D. and V.D. Because T.R. does not contest V.D.'s dependency, we limit our analysis to P.D.
[3] There is some dispute as to whether P.D. verbally confirmed the sexual abuse to her mother. This conflict is resolved in favor of affirming the trial court. See F.R. v. Dep't of Children & Families, 826 So.2d 449, 450 (Fla. 5th DCA 2002) (if the evidence is conflicting or turns on the credibility of witnesses, "all credence and presumption of correctness must be given to the trial court").
[4] The trial court had previously found the father to be a non-offending parent and placed P.D. in his temporary custody.
[5] To agree with the Department would essentially allow courts to find dependency any time there is a scintilla of suspicion that some sort of abuse could have occurred.